UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTHONY J. HANNON,

        Plaintiff,                  Case No. 1:21-cv-666

v.                                        Honorable Jane M. Beckering

GREGORY SKIPPER et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 6.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. The events about

which he complains occurred at that facility.  Plaintiff sues Warden Gregory Skipper, Physician Carmen McIntyre,[1] and Registered Nurse Bryan Deeren.  Plaintiff names twenty other inmates as co-plaintiffs, but these individuals have not signed the complaint.  (ECF No. 1, PageID.2.)

Plaintiff alleges that on December 7, 2020, he was placed in segregation for possession of a weapon.  (*Id.*, PageID.3.)  He was found guilty on December 14, 2020, and sanctioned with ten days in segregation.  (*Id.*)  On December 24, 2020, Plaintiff asked Sergeant Sissell (not a party) why he had not yet been released, and Sergeant Sissell "stated that the Warden stopped all prisoner[] moves."  (*Id.*)

On December 26, 2020, Plaintiff submitted a grievance alleging that Defendant Skipper was holding him in segregation against policy.  (*Id.*)  On December 28, 2020, Plaintiff was tested for COVID-19; his test came back negative.  (*Id.*)  On December 29, 2020, Defendant Skipper "released Plaintiff from [segregation] just three days after Plaintiff wrote a grievance on him."  (*Id.*)

Defendant Skipper moved Plaintiff to "a floor that was COVID infected and had over 40 prisoners that [were] on close contact status."  (*Id.*)  Plaintiff was "moved to J-Block, Fourth floor, cell 39, outside."  (*Id.*)  He alleges that during this time, Defendant Skipper was "placing infected prisoners on floors with non-infected prisoners and placing non-infected prisoners on floors with infected prisoners."  (*Id.*, PageID.4.)

On December 30, 2020, Plaintiff wrote to Defendant Skipper, asking to be moved to I-Block, first floor, "inside where at leas[t] five rooms [were] open and the floor was COVID

---

[1] Plaintiff uses "McIntyer" and "McIntyre" interchangeably throughout the complaint.  Because of other actions in this Court where that Defendant has appeared through counsel, it appears the proper spelling is "McIntyre."  *See, e.g.*, *Snider v. Corizon Medical et al.*, No. 1:20-cv-648 (W.D. Mich.) (MDOC Deft's Mot. for Summary J., ECF No. 48).  Accordingly, that is the spelling the Court will use in this opinion.  The Clerk is directed to change the spelling on the docket to "McIntyre."

free." (*Id.*) Plaintiff sent a second kite to Defendant Skipper on January 4, 2021 asking to be moved. (*Id.*) The next day, Plaintiff again tested negative for COVID-19. (*Id.*) On January 7, 2021, he wrote to Defendant Skipper again, asking to be moved. (*Id.*) He alleges that he had been on loss of privileges (LOP) status since December 24, 2020, "which required him to take a 10 minute shower every morning with other prisoners who [were] infected with COVID." (*Id.*)

Plaintiff avers that on January 8, 2021, inmate Michael Gresham, "who locked on J-4-3[,] tested positive for COVID-19." (*Id.*) Inmate Gresham was also on LOP status and "took showers in the morning with Plaintiff." (*Id.*) Plaintiff claims that Defendants McIntyre and Deeren "waited four more days[,] until January 12, 2021[,] to inform guards that prisoner Gresham had tested positive and needed to be moved to quarantine." (*Id.*) Plaintiff has attached an affidavit from inmate Gresham corroborating these allegations. (ECF No. 1-1.) Plaintiff claims that on January 12, 2021, he tested positive for COVID-19, "just 15 days after the Warden placed him on a[n] infected floor for writing a grievance on him, and 4 days after Defendants [McIntyre] and Deeren waited to tell the guards to move an infected prisoner." (ECF No. 1, PageID.4–5.)

Based on the foregoing, Plaintiff asserts violations of his First and Eighth Amendment rights. (*Id.*, PageID.5.) Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.5–6.)

## II.   Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Claims on Behalf of Other Inmates**

As noted *supra*, Plaintiff names twenty other inmates as co-plaintiffs, but none of these individuals have signed the complaint. Title 28, Section 1654 permits parties to "plead and conduct their own cases personally or by counsel . . . ." Accordingly, Federal Rule of Civil Procedure 11 requires that "[e]very pleading . . . must be signed by at least one attorney of record

4

in the attorney's name—or by a party personally if the party is unrepresented." FED. R. CIV. P. 11(a). Under the statute and rule, Plaintiff, as a layman, may plead and conduct this litigation on his own behalf, but he may not proceed on behalf of others. Moreover, Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961); *United States v. Raines*, 362 U.S. 17, 21 (1961); *Ballard v. Stanton*, 833 F.2d 593, 594 (6th Cir. 1987)).

Plaintiff's competence, as a layman, is "clearly too limited to allow him to risk the rights of others." *Fymbo v. State Farm Fire and Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotes omitted) (cited with approval in *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001)). That does not prevent Plaintiff from offering assistance to the other prisoners, "precedent supports limited inmate-to-inmate legal assistance . . . [but such] assistance does not extend to representation of other inmates in court . . . ." *Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 918 (6th Cir. 2009). The Court concludes that Plaintiff's mention of other prisoners in the complaint, absent the signatures of those prisoners as parties, does not suffice to raise any claim regarding those prisoners' rights.

### B.  First Amendment Retaliation Claim

Plaintiff maintains that Defendant Skipper violated his First Amendment rights by retaliating against him for filing a grievance when he "placed [Plaintiff] on a[n] infected floor." (ECF No. 1, PageID.5.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff alleges that he wrote a grievance against Defendant Skipper on December 26, 2020, for "holding him in [segregation] against policy." (ECF No. 1, PageID.3.) Plaintiff, therefore, has adequately alleged that he engaged in protected conduct.

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Certainly, the knowing placement of a "non-infected" prisoner in close proximity to an "infected" prisoner might constitute "adverse action." But Plaintiff's allegations do not support the inference that such a placement occurred here.

Plaintiff states that the floor where he was placed was "COVID infected," but he does not state that Defendant Skipper was aware that the floor was "COVID infected." Moreover, Plaintiff notes that dozens of prisoners on the floor were on "close contact status" suggesting that they had been in close contact with someone who had tested positive for COVID-19. But Plaintiff does not identify his own status. He alleges that he tested negative for the virus before he was released, but he does not indicate whether he had been in close contact with others who tested positive. The placement of a prisoner who had been in close contact with a COVID-positive prisoner on a floor housing other prisoners who had been in similar contact with a COVID-positive prisoner would not deter a person of ordinary firmness from engaging in protected conduct. Plaintiff's allegations, therefore, permit the Court to infer only the mere possibility of misconduct.

That is not sufficient under *Iqbal*. In fact, the virus was so prevalent at RMI that it is unlikely that any floor offered safety from infection.[2]

Plaintiff's allegations regarding the third element—the requirement that the adverse action be motivated by the protected conduct—also fall short. Retaliation is easy to allege but can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, Plaintiff has not provided sufficient facts from which the Court could reasonably infer that Defendant Skipper knowingly placed Plaintiff in proximity to an infected prisoner because of Plaintiff's complaint about being held in segregation. Nothing in the complaint

---

[2] Ultimately, more than 80% of the prisoners at RMI tested positive. *See* https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (visited Jan. 23, 2022). The Court is permitted to take judicial notice of facts under Rule 201 of the Federal Rules of Evidence where the accuracy of the source regarding this specific information "cannot reasonably be questioned." FED. R. EVID. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." FED. R. EVID. 201(d) (emphasis added). Notwithstanding the Court's ability to take judicial notice under Rule 201 of the Federal Rules of Evidence, the information regarding the number of prisoners infected at RMI plays no role in the Court's decision. Instead, this information merely provides context and additional information to a prisoner who is incarcerated amidst an ongoing deadly pandemic. *C.f. United States v. Mathews*, 846 F. App'x 362, 364 n.3 (6th Cir. 2021).

even suggests that Defendant Skipper was aware of the grievance Plaintiff had filed or that Skipper was aware that Plaintiff had been placed in dangerous proximity to an infected prisoner. The most Plaintiff has alleged is that he filed a grievance asking to be released from segregation and, three days after he filed, he was released.

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Plaintiff's allegations do not support an inference that the temporal proximity is "significant enough" here. Plaintiff was released from segregation at his own request. He had to be moved somewhere. The timing of that decision, therefore, does not support an inference that it was motivated by retaliation. Accordingly, Plaintiff has failed to adequately allege a causal connection between the protected conduct and the adverse action and has failed to state a First Amendment retaliation claim against Defendant Skipper.

### C.     Eighth Amendment Claims

Plaintiff also asserts that Defendants Skipper, McIntyre, and Deeren demonstrated deliberate indifference, thereby violating his Eighth Amendment rights. (ECF No. 1, PageID.5.) It appears that Plaintiff bases his Eighth Amendment claim on Defendant Skipper's placement of Plaintiff on "a[n] infected floor" and Defendants McIntyre and Deeren's act of waiting four days to tell guards that inmate Gresham had tested positive and needed to be moved to quarantine. (*Id.*, PageID.4–5.) Overall, Plaintiff alleges that he was incarcerated under conditions that put him at risk of—and ultimately led to—contracting COVID-19.

1.      Standard

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate

health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 2. Analysis

#### a. Objective Prong

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID 42. The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

The Sixth Circuit has determined that a plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission within a prison and the health risks posed by the virus, certainly at least with respect to medically vulnerable inmates per *Wilson*, and possibly with respect to inmates who are not otherwise medically vulnerable. Plaintiff does not allege that he is medically vulnerable, but he does allege conditions that facilitated COVID-19 transmission within the prison. The Court therefore concludes that at this stage of the proceedings Plaintiff alleges facts sufficient to satisfy the objective prong of the deliberate indifference test.

### b. Subjective Prong

Notwithstanding Plaintiff's ability to satisfy the objective prong, he fails to allege facts sufficient to satisfy the subjective prong of the deliberate indifference test in his claims.

### i. Claim Regarding Housing Assignments

As noted above, Plaintiff avers that Defendant Skipper violated the Eighth Amendment by placing him on an "infected" floor and by co-mingling infected and uninfected inmates. The Sixth Circuit went on in *Wilson* to address the subjective prong of an Eighth Amendment claim, noting that the pertinent question was whether the BOP's actions demonstrated deliberate indifference to the serious risk of harm posed by COVID-19 in the prison.

> There is no question that the BOP was aware of and understood the potential risk of serious harm to inmates at Elkton through exposure to the COVID-19 virus. As of April 22, fifty-nine inmates and forty-six staff members tested positive for COVID-19, and six inmates had died. "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). The BOP acknowledged the risk from COVID-19 and implemented a six-phase plan to mitigate the risk of COVID-19 spreading at Elkton.
>
> The key inquiry is whether the BOP "responded reasonably to th[is] risk." *Farmer*, 511 U.S. at 844. The BOP contends that it has acted "assiduously to protect inmates from the risks of COVID-19, to the extent possible." CA6 R. 35, Appellant Br., PageID 42. These actions include
>
>> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.
>
> *Id.* at 42–43.

> The BOP argues that these actions show it has responded reasonably to the risk posed by COVID-19 and that the conditions at Elkton cannot be found to violate the Eighth Amendment. We agree.
>
> Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844. The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton. Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks. The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing. The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id.* at 840–41.

In its decision, the Sixth Circuit recognized that other Sixth Circuit decisions have found similar responses by prison officials and medical personnel, such as cleaning cells, quarantining infected inmates, and distributing information about a disease in an effort to prevent spread, to be reasonable. *Id.* at 841 (citing *Wooler v. Hickman Cnty.*, 377 F. App'x 502, 506 (6th Cir. 2010); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448–49 (6th Cir. 2014); *Harrison v. Ash*, 539 F.3d 510, 519–20 (6th Cir. 2008); *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018)). The *Wilson* Court also noted that other circuits had concluded that similar actions by prison officials demonstrated a reasonable response to the risk posed by COVID-19:

> In *Swain* [*v. Junior*], the Eleventh Circuit granted a stay of a preliminary injunction pending appeal on state inmates' Eighth Amendment claims. 958 F.3d [1081,] 1085 [(11th Cir. 2020) (per curiam)]. The Eleventh Circuit held that "the inability to take a positive action likely does not constitute 'a state of mind more blameworthy than negligence,'" and "the evidence supports that [Metro West Detention Center ("MWDC") is] taking the risk of COVID-19 seriously." *Id.* at 1088–90 (citation omitted). In response to the pandemic in early March, MWDC began "cancelling inmate visitation; screening arrestees, inmates, and staff; and advising staff of use of protective equipment and sanitation practices" and, after reviewing further CDC guidance, began "daily temperature screenings of all persons entering Metro West, establish[ed] a 'COVID-19 Incident Command

> Center and Response Line' to track testing and identify close contacts with the virus, develop[ed] a social hygiene campaign, and mandate[d] that staff and inmates wear protective masks at all times." *Id.* at 1085–86. The Eleventh Circuit held that, because MWDC "adopted extensive safety measures such as increasing screening, providing protective equipment, adopting [physical] distancing when possible, quarantining symptomatic inmates, and enhancing cleaning procedures," MWDC's actions likely did not amount to deliberate indifference. *Id.* at 1090.
>
> Similarly, the Fifth Circuit granted stays of two preliminary injunctions in *Valentine* [*v. Collier,* 956 F.3d 797 (5th Cir. 2020) (per curiam),] and *Marlowe* [*v. LeBlanc*, No. 20-30276, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam)]. In *Valentine*, inmates at Texas's Wallace Pack Unit filed a class action suit against the Texas Department of Criminal Justice ("TDCJ") alleging violations of the Eighth Amendment. 956 F.3d at 799. In response to the COVID-19 pandemic, TDCJ had taken preventative measures such as providing "access to soap, tissues, gloves, [and] masks," implementing "regular cleaning," "quarantin[ing] of new prisoners," and ensuring "[physical] distancing during transport." *Id.* at 802. The Fifth Circuit determined that the district court applied the wrong legal standard by "collaps[ing] the objective and subjective components of the Eighth Amendment inquiry" by "treating inadequate measures as dispositive of the Defendants' mental state" under the subjective prong and held that "accounting for the protective measures TDCJ has taken" the plaintiffs had not shown deliberate indifference. *Id.* at 802–03. In *Marlow*e, the Fifth Circuit relied on its reasoning in *Valentine* and again reiterated that there was "little basis for concluding that [the correctional center's] mitigation efforts," which included "providing prisoners with disinfectant spray and two cloth masks[,] . . . limiting the number of prisoners in the infirmary lobby[,] and painting markers on walkways to promote [physical] distancing," were insufficient. 2020 WL 2043425, at *2–3.

*Wilson*, 961 F.3d at 841–42.

After reviewing the cases, the *Wilson* Court held that even if the BOP's response to COVID-19 was inadequate, it took many affirmative actions, not only to treat and quarantine inmates who had tested positive, but also to prevent widespread transmission of COVID-19. The Court held that because the BOP had neither disregarded a known risk nor failed to take steps to address the risk, it did not act with deliberate indifference in violation of the Eighth Amendment. *Id.* at 843–44.

In addition, in *Cameron v. Bouchard,* 818 F. App'x 393 (6th Cir. 2020), the Court relied on *Wilson* to find that pretrial detainees in the Oakland County Jail were unlikely to succeed

13

on the merits of their Eighth and Fourteenth Amendment claims. The plaintiffs in *Cameron* claimed that jail officials were deliberately indifferent to the substantial risk of harm posed by COVID-19 at the jail. The district court initially granted a preliminary injunction requiring the defendants to "(1) provide all [j]ail inmates with access to certain protective measures and medical care intended to limit exposure, limit transmission, and/or treat COVID-19, and (2) provide the district court and Plaintiffs' counsel with a list of medically vulnerable inmates within three business days." *Id.* at 394. However, following the decision in *Wilson*, the Court granted the defendants' renewed emergency motion to stay the preliminary injunction, finding that the preventative measures taken by the defendants were similar to those taken by officials in *Wilson* and, thus, were a reasonable response to the threat posed by COVID-19 to the plaintiffs. *Id.* at 395. Subsequently, in an unpublished opinion issued on July 9, 2020, the Sixth Circuit vacated the injunction. *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020).

In the instant case, Plaintiff claims that Defendant Skipper's handling of the COVID-19 crisis at RMI violated his Eighth Amendment rights. The Court notes that the MDOC issued a COVID-19 Director's Office Memorandum (DOM) on April 8, 2020, and issued multiple revised DOMs on the subject to limit the threat posed by COVID-19.[3] *See* MDOC DOM 2020-30 (eff. Apr. 8, 2020) (mandating multiple protective measures including the wearing of masks by prisoners and staff, screening of all individuals before entering prison facilities, keeping of social distance, restricting visits and phone calls, and limiting transfers and cell moves); DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer); DOM 2020-30R3 (eff. May 27,

---

[3] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. *See* note 2, *infra*. The Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, FED. R. EVID. 201(c)(1), and "the fact is not subject to reasonable dispute," FED. R. EVID. 201(b).

2020); DOM 2020-30R4 (eff. Aug. 10, 2020); DOM 2020-30R5 (eff. Aug. 25, 2020); DOM 2020-30R6 (eff. Aug. 27, 2020); DOM 2020-30R7 (eff. Nov. 5, 2020); DOM 2020-30R8 (eff. Nov. 24, 2020); DOM 2021-26 (eff. Jan. 1, 2021); DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R2 (eff. Jan. 21, 2021); DOM 2021-26R3 (eff. Jan. 25, 2021); DOM 2021-26R4 (eff. Mar. 5, 2021); DOM 2021-26R5 (eff. Mar. 19, 2021); DOM 2021-26R6 (eff. Mar. 26, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R8 (eff. Aug. 6, 2021); DOM 2021-26R9 (eff. Aug. 23, 2021); DOM 2021-26R10 (eff. Oct. 11, 2021); DOM 2021-26R11 (eff. Nov. 19, 2021); DOM 2021-26R12 (eff. Dec. 3, 2021); DOM 2022-21R2 (eff. Jan. 14, 2022).  The DOMs set forth specific details about protective measures to be taken in all facilities:  describing the types of PPE to be worn by staff and when; setting screening criteria for individuals entering facilities; setting social distancing requirements; establishing isolation areas and practices for isolation; setting practices for managing prisoners under investigation for COVID-19; modifying how personal property is managed; setting requirements for jail transfers; outlining communication adjustments and video visitation; upgrading hygiene, health care, and food service policies; setting protocols for COVID-19 testing of prisoners; and making other necessary adjustments to practices to manage the pandemic.  Thus, the MDOC responded to the COVID-19 threat by adopting new policies and adjusting practices.  Plaintiff does not allege that Defendant Skipper failed to take the actions outlined in the DOMs.

Clearly, the MDOC, including Defendant Skipper, has taken extensive steps to address the risk of COVID-19 to inmates statewide and at RMI.  As noted by the Sixth Circuit in *Wilson*, such actions demonstrate the opposite of a disregard of a serious health risk.  *Wilson*, 961 F.3d at 841.  Moreover, Plaintiff's vague allegations that Defendant Skipper placed him on an

"infected" floor and housed infected and infected inmates together fail to state a claim. Plaintiff fails to suggest that Defendant Skipper personally was aware of each inmate who tested positive for COVID-19 and was personally involved in the housing assignments for each inmate. Furthermore, notwithstanding Plaintiff's vague description that he was moved to an "infected" floor at RMI, he fails to allege that his placement on the floor necessarily put him in close proximity to any prisoner known or suspected to have COVID-19. In short, Plaintiff's allegations demonstrate neither that Defendant Skipper knew of, nor that Defendant Skipper disregarded, an excessive risk to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 834. At best, Plaintiff has alleged facts suggesting only the mere possibility that Defendant Skipper violated the Eighth Amendment. His allegations therefore fail to state a claim. *See Iqbal*, 556 U.S. at 678.

### ii. Delay in Notifying Inmate of COVID-19 Results

Plaintiff also suggests that Defendants McIntyre and Deeren violated his Eighth Amendment rights when they failed to notify guards that inmate Gresham had tested positive for COVID-19 until four days after he initially tested positive. (ECF No. 1, PageID.4–5.) According to Plaintiff, he took morning showers with inmate Gresham because inmate Gresham was also on LOP status at that time. (*Id.*, PageID.4.) Plaintiff avers that he tested positive for COVID-19 on January 12, 2021. (*Id.*)

Plaintiff, however, fails to allege facts suggesting that Defendants McIntyre and Deeren knew that inmate Gresham tested positive on January 8, 2021, and deliberately delayed informing guards of inmate Gresham's status until January 12, 2021. Plaintiff's complaint and inmate Gresham's affidavit only permit the Court to infer that Defendants McIntyre and Deeren knew of inmate Gresham's testing results on January 12, 2021, the same day he was moved into quarantine. Plaintiff, therefore, fails to demonstrate that Defendants McIntyre and Deeren knew

16

of an excessive risk to Plaintiff's health and safety. *See Farmer*, 511 U.S. at 834. Moreover, Plaintiff has not alleged facts allowing for a reasonable inference that he eventually tested positive for COVID-19 solely because of his exposure to inmate Gresham in the showers. Indeed, Plaintiff's complaint is devoid of facts indicating that he took morning showers in the same space as inmate Gresham at any time between January 8–12, 2021. Consequently, Plaintiff also fails to demonstrate that Defendants McIntyre and Deeren disregarded an excessive risk to Plaintiff's health and safety. *See Farmer*, 511 U.S. at 834. In short, Plaintiff has alleged facts suggesting only the mere possibility that Defendants McIntyre and Deeren violated the Eighth Amendment. His allegations against them, therefore, fail to state a claim. *Iqbal*, 556 U.S. at 678.

Although the Court is sympathetic to Plaintiff's concerns about the COVID-19 virus and the fact that he contracted the virus, his claims are entirely based upon speculation. The MDOC and Defendants have promulgated numerous policies to address the risk posed to inmates by COVID-19. Plaintiff has failed to allege facts demonstrating that any Defendant was deliberately indifferent to his health and safety. At most, with the benefit of hindsight, they may have been negligent when they housed infected and uninfected inmates in the same unit and failed to timely transfer infected inmates to quarantine. Allegations of negligence, however, fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide

whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   February 10, 2022                           /s/ Jane M. Beckering
                                                      Jane M. Beckering
                                                      United States District Judge